Tompkins, J.,
delivered the opinion of the Court.
Bartlett, on the 10th of February, 1832, filed his bill against Glendy and Pettus, complaining that on the fifth day of March., 1829, he made his bond to said Glendy, for the sum of two hundred and twentydive dollars, and that said Glendy some time after left this country, and as he is informed and believes now resides in some part of South America j and that afterwards a suit was instituted in the Circuit Court of Marion county against the complainant on said note, in the name of said Glendy for the benefit of said Pettus, and that at the October term of the Circuit Court, for the year 1831, judgment was rendered against him for the amount of said note, &c., and that execution has been issued. He further stated that the consideration of the said bond was, sundry small accounts and claims which Glendy represented to him to be good, and a small stock of hogs, amounting in the whole to the nominal sum of three hundred dollars and upwards; but that- owing to insolvencies and collections made by Glendy previous to the transfer, and the want of proof occasioned by Glendy *244 leaving the country, the said accounts had proved unavailing, and that he had not been able to obtain any part of the stock of bogs: then alledging that the consideration-had wholly failed, and that he was without relief at law, because Glendy was insolvent, and the consideration of the note on which he was sued was known only to him. Relief was prayed and an injunction was granted. Pettus answered, denying that he had any knowledge of the consideration of the bond on which Bartlett had been sued, and on motion the bill was dismissed.
When an injunction is applied for, the applicant should be diligent. The complainant does not tell when the action on the bond was begun ; but he tells us that it was more than three months after judgment was rendered against him, and not till the Sheriff had received the execution and begun to harass him for the amount recovered that he began to bestir himself to find relief in equity; but when he comes into the Court of Equity what has he to say why execution should not issue?
He had given his note for two hundred and twenty-five dollars in consideration of sundry small accounts and claims, and a stock of hogs transferred to him by Glendy, all amounting to upwards of three hundred dollars. But he says, that owing to insolvencies and collections made by Glendy, previous to the transfer, and the want of proof in consequence of Glendy’s absence from the country, the accounts had been wholly unavailing. He appears to have been buying a bargain from Glendy, and giving a note of two hundred and twenty-five dollars for accounts, claims, and hogs, amounting to upwards of three hundred dollars, perhaps three hundred and ninety, or more. It) then, it is a part of the agreement that Glendy should make good what might have been lost by insolvencies, it should have been so stated in the bill; and if it were also a part of the agreement that Glendy should stay in the country to furnish him proof of the accounts sold to him, that too should have been stated. But he has not even told us that any thing was lost by insolvency. He says that owing to insolvencies, &c., the accounts had proved unavailing. The hogs too, it seems, have proved unavailing, and we are equally uninformed of the liability of Glendy on that account. We are decidedly of the opinion that the injunction should not have been granted, and that the bill was properly dismissed. The decree of the Circuit Court dismissing the bill is therefore affirmed.